IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN WILLIAM BRITT     *

Plaintiff     *

v     *       Civil Action No. GLR-17-565

WEXFORD HEALTH SOURCES, INC.     *

    *

Defendant     ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Wexford Health Sources, Inc.'s ("Wexford") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 12). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.[1]

---

[1] Also pending before the Court is Wexford's Motion for Extension of Time (ECF No. 11), Plaintiff John William Britt's Opposition, docketed as a Motion for Other Relief (ECF No. 14), and Britt's Motion to Appoint Counsel (ECF No. 9). The Court will grant Wexford's Motion for Extension of Time nunc pro tunc. Because Britt's Motion for Other Relief is more properly an Opposition, the Court will deny it; the Court is granting Wexford's Motion for Summary Judgment.

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by Britt, the Court concludes that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. There are no exceptional circumstances that warrant the appointment of an attorney to represent Britt under §1915(e)(1). Accordingly, the Court will deny Britt's Motion.

# I.    BACKGROUND[2]

Plaintiff John William Britt, an inmate in the custody of the Maryland Division of Correction and confined in Maryland Correctional Institution Jessup (MCIJ), alleges he was denied needed surgery for a severe neck injury causing him "years of suffering." (Compl., ECF No. 1).  "Wexford Health Sources, Inc. Review Board Members" denied him surgery scheduled for July 19, 2016.  (Id. at 4).  The surgery was meant to address his congenital narrowing of the central spinal cord, borderline central canal stenosis at C3-C4, and moderate left C-4 neural stenosis.  (Id.).  Britt explains that these conditions reduced his motor skills by 70%.  (Id.).  Britt seeks an injunction requiring Wexford to provide the surgery needed and $250,000.00 in damages for "deliberate indifference." (Id.).

Dr. Yonas Sissay, a Wexford physician that provides medical care to inmates in MCIJ, testifies that suffers from chronic neck and back pain with limited movement of his neck.  (Sissay Aff. at 1, ECF No. 12-5).  In July 2016, Dr. Charles Park, a neurosurgeon at Mercy Medical Center, evaluated Britt.  (Id. at 2).  Park noted that Britt experienced pain and had limited movement of his neck, but did not note any neurological deficits, nor did Britt have a loss of strength in upper and lower extremity muscle groups.  (Id.).  Based on that evaluation, Park "recommended an anterior cervical discectomy and fusion with cage reconstruction and internal fixation with plating from C3-C4 surgery as a last resort, and explained to [Britt] the risks and benefits of surgery."

---

[2] Unless otherwise noted, the facts outlined here are uncontroverted and the Court views them in the light most favorable to Britt.

(Id.) (emphasis in original). Alternative treatments were noted to be physical therapy, steroid injections, and pain management. (Id.).

When Sissay presented the specialty care requests to Wexford's utilization management review, the recommendation was to proceed with conservative treatment. (Id. at 3). The recommendation was made in light of possible side-effects of the surgery. Those risks included infection, bleeding, nerve damage, numbness, burning sensation, paralysis, spinal fluid leakage, difficulty swallowing, hoarseness of voice, hardware related problems such as misposition, malposition, loosening or breaking hardware; stroke, coma, pulmonary embolism, and death. (Id. at 2). In addition, the recommendation noted that pain relief from the surgical procedure would not be 100%; 50% would be the goal and Britt's pain could worsen after the surgery. (Id.).

Accordingly, Britt began physical therapy. Britt had gone through a "limited prior session of physical therapy" previously and reported that it did not help his condition. (Id. at 3). Likewise, Britt reported the new session of physical therapy was no exception as Britt reported it to be "wholly ineffective." (Id. at 3). Upon receipt of that report, Britt was given a steroid epidural injection which provided pain relief for about one week but did not provide long-term relief, nor did it address the limitation of movement in his neck. (Id.). Britt also received pain medication including Neurontin, Acetaminophen, Tylenol #3, Prednisone, Mobic, Naproxen, and Ibuprofen. (Id.).

When the conservative treatments failed to provide significant pain relief, Britt was sent back to Dr. Park to be re-evaluated in April of 2017. (Id.). Dr. Park ordered a repeat x-ray and MRI which were reviewed in July of 2017. (Id.). Park recommended

neck surgery and Wexford utilization management approved the request for surgery in August of 2017. Britt underwent the surgery on September 20, 2017 at Mercy Medical Center. (Id.).

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d

435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Britt filed his Amended Complaint pro se. Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### 2.    Conversion to a Motion for Summary Judgment

In this case, Wexford captions its Motion in the alternative for summary judgment. (ECF Nos. 27, 31). A motion styled as a motion to dismiss or, in the alternative, for

summary judgment implicates the Court's discretion under Rule 12(d).  See Kensington

Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011),

aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462

(4th Cir. 2012).   This Rule provides that when "matters outside the pleadings are

presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as

one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).

    The Court "has 'complete discretion to determine whether or not to accept the

submission of any material beyond the pleadings that is offered in conjunction with a

Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or

simply not consider it.'"   Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at

*5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure §

1366, at 159 (3d ed. 2004, 2012 Supp.)).   The Court's complete discretion is guided by

the United States Court of Appeals for the Fourth Circuit's two-part test for proper

conversion of a Rule 12(b)(6) motion to a Rule 56 motion.   Under this test, the "parties

[must] be given some indication by the court that it is treating the 12(b)(6) motion as a

motion for summary judgment" and "the parties [must] first 'be afforded a reasonable

opportunity for discovery.'"   Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of

Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th

Cir. 1985)).

    When the movant expressly captions its motion "in the alternative" as one for

summary judgment and submits matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Here, Wexford captions its Motion in the alternative for summary judgment and attach matters beyond Britt's Complaint for the Court's consideration. (ECF No. 28). Britt does not file a 56(d) affidavit requesting discovery. Thus, because the Court will rely on Wexford's materials outside the pleadings, the Court will construe Wexford's Motion as a motion for summary judgment.

## 2. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.**    <u>**Analysis**</u>

**1.    Injunctive Relief**

Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot.  <u>See</u> <u>Slade v. Hampton Rd's Reg'l Jail</u>, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); <u>see also</u> <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief).  Section 1983 actions seeking injunctive relief, declaratory relief, or both have been declared moot when the practices, procedures, or regulations challenged were no longer in use.  <u>See, e.g.</u>, <u>Tawwab v. Metz</u>, 554 F.2d 22, 23-24 (2d Cir. 1977); <u>Uzzell v. Friday</u>, 401 F.Supp. 775 (M.D.N.C. 1975), <u>aff'd in pertinent part</u>, 547 F.2d 801 (4th Cir. 1977).

Britt does not dispute that he has undergone surgery to his neck.  (<u>See</u> ECF No. 14).  Although he appears to assert he was only provided part of the surgery required, he provides no further explanation regarding that allegation.  Thus, the Court agrees with Wexford that claim for injunctive relief is moot.  Britt's claim for monetary damages, however, is not made moot by providing the surgery.

**2.    Eighth Amendment Claim**

The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976) (citing <u>Furman v. Georgia</u>, 408 U.S. 238, 392–93 (1972)).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that

the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  Estelle, 429 U.S. at 106.  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention, but failed to either provide it or ensure the needed care was available.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

A prisoner's disagreement with a prescribed course of treatment does not establish deliberate indifference and, therefore, does not state a claim.  See Peterson v. Davis, 551 F.Supp. 137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Likewise, claims of medical negligence or disputed questions of medical judgment are not cognizable because they do not involve deliberate indifference.  See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (stating questions of medical judgment are not subject to judicial review).  Indeed, the "mere failure to treat all medical problems to a prisoner's satisfaction . . . is insufficient to support a claim under § 1983."  Peterson, 551 F.Supp. at 146; accord Fore v. Goodwin, 407 F.Supp. 1145, 1146 (citing Cole v. Williams, 526 F.2d 588 (4th Cir. 1975)) ("A prisoner cannot be ultimate judge of what medical treatment is necessary or proper . . . .").

Where, as here, there is recognition by the doctors involved that the medical condition concerned is a serious one, the objective prong is satisfied. Britt appears to argue that the one-year wait between the time he was first evaluated by Dr. Park and the second evaluation resulting in surgery, was the result of deliberate indifference to his serious medical need. There is no evidence in the record that Wexford's decision to delay Britt's surgery went beyond "mere negligence." <u>King</u>, 825 F. 3d at 219 (quoting <u>Farmer</u>, 511 U.S. at 835). Rather, there is only evidence that the delay occurred to accommodate conservative treatment options before resorting to the surgery, which carried a high risk. And Britt's disagreement with the course of his treatment— specifically, the timing of the surgery—itself does not establish deliberate indifference. <u>See</u> <u>Peterson</u>, 551 F.Supp. at 146. The Court, therefore, will grant Wexford's Motion.

### III. CONCLUSION

For the foregoing reasons, Wexford's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 12) is GRANTED. A separate Order follows.


Entered this 30th day of March, 2018.     _____/s/_____
George L. Russell, III
United States District Judge